# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

BRIAN C. PHILLIPS,

    Plaintiff,

 v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

CASE NO. 3:17-cv-05356-JRC

ORDER ON PLAINTIFF'S COMPLAINT

  This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 8). This matter has been fully briefed. *See* Dkt. 15, 19, 20.

Plaintiff has traumatic brain injuries from playing tackle football, evidenced by an MRI demonstrating a frontal lobe lesion. A clinical neuropsychologist who conducted extremely extensive testing and examination of plaintiff included the following summary:

> Consistent with his neurological findings, [plaintiff] demonstrates a pattern of deficits often associated with the right frontal brain lesion. The highly significant discrepancy between verbal and nonverbal abilities is strongly associated with right hemisphere lateralization, and the particular weakness in spatial organization, phonemic verbal fluency, and reading efficiency suggests a more frontal involvement. Perhaps even more significant is [plaintiff's] described behavioral passivity. Although he appears to respond well to structured prompts for a given behavior, he does not usually initiate these on his own. This is a serious deficit in adaptive behavioral functioning, which has a major impact upon his capacity to resume fully independent living.

AR. 414. The examining neuropsychologist also concluded that if plaintiff did not receive effective rehabilitation, he would be "unlikely to demonstrate the pace or persistence for any form of competitive employment or academic achievement, and may become permanently disabled." AR. 415. The ALJ rejected this opinion, and also failed to discuss the opinion from an examining neurologist who opined that plaintiff should be enrolled as disabled. AR. 30, 462.

After considering and reviewing the record, the Court concludes that the ALJ erred when evaluating the medical evidence. For example, the ALJ failed to discuss the only opinion from the neurologist, Dr. Yoder, provided during the relevant assessed period of time. As Dr. Yoder agreed that plaintiff should be "enrolled as disabled," the failure to acknowledge this opinion is not harmless error.

Therefore, this matter is reversed and remanded for further administrative proceedings consistent with this Order.

# BACKGROUND

Plaintiff, BRIAN C. PHILLIPS, was born in 1993 and was 18 years old on the alleged date of disability onset of September 12, 2012. *See* AR. 166-75. Plaintiff graduated from high school and started college, but dropped out when it became difficult to concentrate. AR. 42-43. He has some work history as a cashier/attendant in a gym, construction laborer, changing oil in vehicles and sheet metal fabricator. AR. 205-16. Plaintiff was fired from his last job for being angry and disrespectful and for being a no call/no show though he thought he'd been given the day off. AR. 54.

According to the ALJ, plaintiff has at least the severe impairments of "cognitive disorder status-post traumatic brain injuries, mood disorder, and headaches (20 CFR 416.920(c))." AR. 22.

At the time of the hearing, plaintiff was living half the time with his dad and half the time with his mom. AR. 48.

# PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration. *See* AR. 77-86, 88-98. Plaintiff's requested hearing was held before Administrative Law Judge Joanne E. Dantonio ("the ALJ") on May 29, 2015. *See* AR. 38-75. On September 21, 2015, the ALJ issued a written decision concluding that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 17-37.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ provided legally sufficient reasons to reject Dr. Yoder's October 2014 Clinical

Progress (SOAP) Notes and Opinion; (2) Whether the ALJ provided legally sufficient reasons to reject Dr. Powell's opinion; (3) Whether the ALJ provided legally sufficient reasons to reject plaintiff's subjective claims; (4) Whether the ALJ provided legally sufficient reasons to reject the lay testimony; and (5) Whether in light of these errors, the RFC, hypothetical questions, and steps four and five findings remain supported by substantial evidence. *See* Dkt. 15, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Whether the ALJ provided legally sufficient reasons to reject Dr. Yoder's October 2014 Clinical Progress (SOAP) Notes and Opinion.**

Plaintiff contends that the ALJ erred when failing to credit fully the medical opinion of neurologist, Dr. Carl Yoder, M.D. Although the ALJ rejected Dr. Yoder's earlier opinions issued prior to the period of time relevant to the disability analysis (August 16, 2013, the application date), the ALJ did not provide any rationale to reject Dr. Yoder's SOAP notes, and failed to note his opinion that plaintiff was disabled, which were provided on October 6, 2014. Defendant contends that the ALJ actually cited the

relevant treatment record, and cites to some of plaintiff's reports and to the diagnosis noted within the ALJ's written decision. *See* Dkt. 19, pp. 3-5.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2).

Dr. Carl Yoder, M.D. examined plaintiff on more than one occasion and also appears to have been involved in recommending a referral for further care and helping to ensure that plaintiff received such care. *See* AR. 458-60. Therefore, Dr. Yoder likely qualifies as a treating physician; however, based on the Court's review of the record, the Court is not applying a higher standard to the ALJ's rejection of Dr. Yoder's opinion, as the Court concludes that she erred even with a lower standard.

Dr. Yoder examined plaintiff on October 6, 2014, after plaintiff's August 16, 2013 application date. *See* AR. 20, 461. Dr. Yoder observed that plaintiff had a flat affect, and also observed following neurological examination that plaintiff demonstrated a "decreasing concentrating ability." AR. 461. Although plaintiff "was able to say the months of the year in reverse [], he was very slow in the process." *Id*. Dr. Yoder observed that plaintiff was not oriented as to time, place, and person. *Id*. After conducting brief memory tests, Dr. Yoder indicated that plaintiff's short term memory is impaired. *Id*.

Dr. Yoder diagnosed plaintiff with mild memory disturbance following organic brain damage; history of traumatic brain injury; headache syndromes; insomnia; and depression. AR. 462. In his concluding note, Dr. Yoder indicated that "a residential intensive rehabilitation program with both cognitive and behavioral components is what is needed to maximize his recovery, however until that time I agree with trying to get him enrolled in the outpatient rehabilitation treatment program for head trauma." *Id.* Dr. Yoder also indicated that he agreed with getting plaintiff as many resources as available, including the example of "enrolling him as disabled." *Id.*

Defendant concedes that the ALJ failed to note Dr. Yoder's opinion that he agreed with enrolling plaintiff "as disabled." *See* Dkt. 19, pp. 4-5. However, because the ALJ discussed Dr. Yoder's earlier opinions, and because plaintiff failed to challenge the ALJ's rejection of the earlier opinions, defendant contends that "[t]hus, the ALJ's valid reasoning applies equally to Dr. Yoder's conclusory statement from October 2014 that plaintiff should be 'enroll[ed] as disabled.'" *Id.* at 5. However, the logic of defendant's argument is not obvious; defendant fails to explain how the fact that plaintiff did not challenge the rejection of the 2013 opinion means that the reasons offered by the ALJ for the failure to credit fully Dr. Yoder's 2013 opinion apply equally to Dr. Yoder's 2014 opinion.

Furthermore, Dr. Yoder's 2014 opinion includes Dr. Yoder's agreement that plaintiff should be "enroll[ed] as disabled," an opinion that does not seem to appear in any of the 2013 examinations. *See* AR. 462. Clearly the ALJ's rationale for failing to credit fully the 2013 opinions does not necessarily apply to an opinion that is new and not

included within the 2013 treatment record. In addition, as the ALJ failed to discuss the notation from Dr. Yoder's 2014 treatment record regarding plaintiff being enrolled as disabled, the ALJ did not herself find that any of the rationale she relied on when failing to credit fully Dr. Yoder's 2013 opinions applied to the 2014 opinions. According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may [or would] have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citing *Chenery Corp, supra*, 332 U.S. at 196).

Defendant also contends that, "as a matter of law, the ALJ was not required to credit Dr. Yoder's conclusion on an issue ultimately reserved to the Commissioner," that is, the question of whether plaintiff is disabled. Dkt. 19, p. 4. However, the fact that the ALJ was not required to credit fully this conclusion does not mean that she was free to ignore it.

According to the Ninth Circuit, "'physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability - the claimant's ability to perform work.'" *Garrison v Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)). Although "'the administrative law judge is not bound by the uncontroverted opinions of the claimant's

physicians on the ultimate issue of disability, [] he cannot reject them without presenting clear and convincing reasons for doing so.'" *Reddick, supra*, 157 F.3d at 725 (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (other citations omitted)). "A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Id.* (citing *Lester*, 81 F.3d at 830). Furthermore, for "treating sources, the rules also require that [the Social Security Administration makes] every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2 at *6. This Ruling indicates that "opinions from any medical source on issues reserved to the Commissioner must never be ignored." *See id*.

In addition, although defendant is correct that the ALJ noted certain aspects of Dr. Yoder's 2014 opinion, defendant fails to acknowledge that the ALJ offered no rationale for failing to credit fully the aspects of the record cited. For example, although it is true that the ALJ noted that plaintiff demonstrated "a decreasing concentrating ability," the ALJ offered no reason for failing to credit fully this opinion or include it within plaintiff's residual functional capacity ("RFC"). *See* AR. 25. Likewise, the ALJ failed to note that although plaintiff was able to say the months of the year in reverse, Dr. Yoder observed that "he was very slow in the process." AR. 461.

Given plaintiff's application date, the ALJ failed to discuss what is likely the most relevant opinion from plaintiff's neurologist Dr. Yoder. But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d

562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571. Therefore, the Court concludes that the ALJ erred.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit has reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

In his concluding note, Dr. Yoder opined that plaintiff needed "a residential intensive rehabilitation program with both cognitive and behavioral components," and indicated that he agreed with getting plaintiff as many resources as available, including the example of "enrolling him as disabled." AR. 462. The Court cannot conclude with

confidence "'that no reasonable ALJ, when fully crediting [Dr. Yoder's 2014 opinion], could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56). This matter requires further administrative proceedings.

### (2) Whether the ALJ provided legally sufficient reasons to reject the opinion of Dr. John Powell, Ph.D.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. Therefore, the remainder of the medical evidence should be assessed anew following remand of this matter. However, the Court notes that the ALJ failed to credit fully Dr. Powell's opinion in part based in part on a finding that his opinion "is a vocational decision and relates to a legal conclusion reserved for the Commissioner," which the Court already has concluded is insufficient rationale, *see supra*, section 1.

The Court also finds persuasive plaintiff's argument that the ALJ's failure to credit fully Dr. Powell's opinion based on the general finding that "it is not consistent with the overall record" impermissibly leaves "the court to sift through the record to find the evidence to refute Dr. Powell." Dkt. 15, p. 7 (citation omitted). Although defendant cites three pages of the ALJ's written decision in support of a finding of an inconsistency, even if there is support for the ALJ's finding within these three pages, the Court still is left to guess at which aspects of these three pages of the decision reflects the rationale that is relied on for the failure to credit fully Dr. Powell's opinion. Furthermore, following this Court's review of the ALJ's discussion of the medical evidence as well as of Dr. Powell's opinion, the Court concludes that a finding of inconsistency is not based on substantial

evidence in the record as a whole. For example, Dr. Powell opined as follows: "The key to [plaintiff's] adaptive functioning may be to structure his activities wherever possible. When prompted, he performs reasonably well in most areas. Without prompting, or when trusted to follow through on his own, he often does not initiate the necessary behavior." AR. 415. This is consistent with the lay statement from plaintiff's mother that he can do household chores and yard work, but he requires reminders. *See* AR. 196. The Court also notes that neither the ALJ in her written decision, nor defendant in the response brief, have directed the Court to any evidence in the record that contradicts this opinion from the examining psychological specialist, corroborated by a lay statement from someone who sees him regularly. This opinion of the need for prompting, coexistent with many normal cognitive functions, also appears entirely consistent with research data on problematic symptoms following traumatic brain injury due to concussion or brain lesion:

> Executive dysfunction is an important component of neurobehavioral disruption following traumatic brain injury (TBI), often leading to significant functional impairment even in cases defined as "mild" TBI by commonly used medical criteria. Furthermore, the integrity of executive functions following TBI demonstrate significant associations with critical life outcomes such as vocational success and social autonomy, even when evaluated many years after injury. The majority of cases of TBI involves some level of disruption in frontal-subcortical systems functioning, potentially resulting in impaired executive capacities. Such injuries include not only direct insult to the frontal lobes, such as through contusion resulting from coup or contre-coup injuries, but also indirect damage due to lesions. . . . Cognitive and behavioral impairments resulting from executive dysfunction are often among the most persistent and prominent sequelae following TBI, despite otherwise good neurological recovery. . . . . executive functions [can be characterized] as consisting of four components: (1) volition; (2) planning; (3) purposive action; (4) effective performance.

Brenna C. McDonald, Laura A. Flashman, and Andrew J. Saykin, Executive dysfunction following traumatic brain injury: Neural substrates and treatment strategies, 17 Neural Rehabilitation 323-34, 333 (2002) (available at: https://content.iospress.com/articles/neurorehabilitation/nre00166, last visited January 25, 2018). The Court notes that the relevant types of injuries regularly found to result in the discussed executive dysfunction include not only certain types of contusions (coup countre-coup) but also certain types of lesions (entailing frontal connectivity), and plaintiff has both of these. *See id.*

Furthermore, some of these symptoms of executive dysfunction "may not be apparent on standardized testing." *Id.* at 333. Therefore, regarding some lack of limitation in certain cognitive areas following some mini-mental status examinations, the Court notes the examinations performed by Dr. Powell, which he indicates took approximately 10 hours:

> Shipley Institute of Living Scale
> Wechsler Adult Intelligence Scale-3rd Edition (WAIS-III)
> Wechsler memory scale-3rd Edition (WMS-III)(Select Subtests)
> Ray Complex Figure Test (RCFT)
> Hooper Visual Organization Task (HBOT)
> Aphasia Screening Test (AST)
> Sensory-Perceptual Exam (SPE)
> Controlled Oral Word Association Test (COWAT)
> Animal Naming Tests (AND)
> Boston Naming Test (BNT)
> Iowa-Chapman Reading Comprehension Tests (ICRT)
> Trail-Making Tests, A & B (TNT)
> Symbol Digit Modalities Test (SDMT): Written & Oral
> Stroop Test
> Connors' Continuous Performance Test-2nd Edition (CPT-2)
> Finger Tapping Test
> Grip Strength Test

        Grooved Pegboard Test (GPT)
        Tower of London Test (TOL)
        Green's Medical Symptom Validity Test (MCT)
        Personality Assessment Inventory (PAI)

AR. 410-11. The ALJ's generally referring to "the overall record," even after discussing some reports indicating some normal mini mental status examination results, is not a legitimate basis for failing to credit fully Dr. Powell's opinion. This opinion likely should be credited in full.

    (3)    **Whether the ALJ provided legally sufficient reasons to reject plaintiff's subjective claims.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, sections 1 and 2. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter.

    **(4)    Whether the ALJ erred when rejecting the lay testimony.**

Similarly, the Court concludes that the lay evidence should be assessed anew following remand of this matter. However, the Court notes that the ALJ rejected the evidence provided by plaintiff's mother in part because she "does not possess the medical training necessary to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms." AR. 31. However, as argued by plaintiff, the fact that she "was not medically trained only meant she was a lay witness," and therefore simply set the standard of germane rationale required for the failure to credit fully her

observations. Dkt. 15, p. 9 (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's failure to credit fully evidence from the lay witness regarding the moods and mannerisms of her son because she does not possess special training is not an appropriate basis to "question[] the accuracy of [her] statements." AR. 31. In addition, although the ALJ failed to credit fully her statements because the ALJ could not consider her "to be a disinterested third party due to her relationship with the claimant," this rationale, too, is inappropriate as lay evidence may not be disregarded simply because of the relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. *Valentine v. Comm'r SSA,* 574 F.3d 685, 694 (9th Cir. 2009) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993)). Finally, although the ALJ also found that her opinion is inconsistent "with the preponderance of the opinions and observations by medical doctors," not only is this extremely vague, but also, her discarded testimony appears very consistent with the medical opinions of Drs. Yoder and Powell.

Following a proper consideration of the medical evidence on remand of this matter, the ALJ should assess anew the lay evidence provided by plaintiff's mother.

(5) **Whether in light of these errors, the RFC, hypothetical questions, and steps four and five findings remain supported by substantial evidence.**

Similarly, the remainder of the sequential disability evaluation process should be completed anew following remand of this matter.

//

//

(6) **Should this matter be reversed and remanded for further administrative proceedings or with a direction to award benefits.**

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The first step entails the court's determination that the ALJ erred when rejecting evidence. *Smolen, supra*, 80 F.3d at 1292 (citations omitted); *see also, supra*, sections I and II. Next, as stated recently by the Ninth Circuit:

> Second, we turn to the question whether further administrative proceedings would be useful. In evaluating this issue, we consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules.

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (citations omitted).

Here, based on the record as a whole, the Court concludes that "further administrative proceedings would be useful." *Id*. This case contains ambiguities. As noted previously, some of the more subtle symptoms of executive dysfunction "may not be apparent on standardized testing." McDonald, B.C., *et al*., *supra,* at 333. The examining clinical neuropsychologist who performed ten hours of rigorous

neuropsychological testing opined that plaintiff needs to be prompted and requires effective rehabilitation. AR. 415. The exact vocational effects are unclear.

Therefore, further administrative proceedings would be useful and the ALJ may wish to call a medical expert in this case; recontact Dr. Powell, who appears to have conducted the most rigorous neuropsychological testing; and/or recontact Dr. Yoder, who was unable to provide a function by function opinion (for which the ALJ in part failed to credit fully Dr. Yoder's earlier opinions) until his hospital lawyers contacted plaintiff's lawyer "to clarify the appropriate format." AR. 462.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 26th day of January, 2018.

J. Richard Creatura
United States Magistrate Judge